532 So.2d 1199 (1988)
Cynthia Diane Cliburn BOLDING, Appellant,
v.
Marshall Lynn BOLDING, Appellee.
No. 20073-CA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1988.
Rehearing Denied November 23, 1988.
*1200 Hamilton & Carroll by Orlando N. Hamilton, Jr., Oak Grove, for appellant.
Rankin, Yeldell, Herring & Katz by Alex W. Rankin, Bastrop, for appellee.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiff, Cynthia Cliburn Bolding Nutt, who is divorced from the defendant, Marshall Bolding, appeals a trial court judgment awarding custody of the two minor children born of the marriage, to the children's paternal grandmother, Betty Nichols, an intervenor in the case. For the following reasons, we affirm.

*1201 FACTS
Cynthia Bolding Nutt and Marshall Bolding were married April 27, 1975 in Morehouse Parish. Two children were born of this marriage, Christopher Martin and Phillip Marcus.
In May, 1984, the plaintiff left the defendant, taking the two children with her. After leaving the defendant, the plaintiff filed suit for separation on May 14, 1984. The plaintiff and the children lived with a man with whom the plaintiff was having an affair. Local law enforcement officials seized the children and arrested the plaintiff for keeping the oldest child out of school. After her release, the plaintiff left Louisiana and went to Indiana where she lived with her paramour for approximately one year. Not only prior to the break up of the marriage between the plaintiff and the defendant but also subsequent thereto, both the plaintiff and the defendant were abusers of drugs and alcohol.
During the plaintiff's absence, the defendant filed a reconventional demand seeking custody of the children. Also during this time, the plaintiff's attorney withdrew and a curator was appointed to represent her. On November 2, 1984, the defendant obtained a judgment of separation. He was also awarded permanent custody of the two minor children.
The record indicates that at sometime shortly thereafter the defendant struck one of the children. He later attempted suicide. Although no order is contained in the record, it appears that the Department of Health and Human Resources then placed actual custody of the children with their paternal grandmother, Betty Nichols.
In 1985, the plaintiff returned to Louisiana, and began residing with her parents. On April 22, 1985, she filed a rule for change of child custody against Marshall Bolding.
On May 10, 1985, the children's paternal grandmother, Betty Nichols, filed a petition of intervention seeking custody of the children.
On May 14, 1985, the maternal grandparents, Cecil and Celesta Cliburn, also filed a petition of intervention. In their petition, they alleged that custody of the children should be granted to their daughter, the plaintiff. However, they alleged in the alternative, that if custody was not awarded to their daughter, then they should be awarded custody.
On May 15, 1985, the trial court ordered the Department of Health and Human Resources to do home studies on all parties and ordered that the parties and the children report to the Monroe Mental Health Clinic for psychological evaluation.
The home studies were completed in September, 1985. It does not appear from the record that the psychological evaluations were ever conducted.
During the pendency of the proceedings, the plaintiff moved out of her parent's home and began living with James Nutt. The plaintiff became pregnant and subsequently she and Mr. Nutt were married.
On May 4, 1987, a hearing was held on the rule to change custody. The defendant did not make an appearance nor was he represented by counsel. The Cliburns were represented by the plaintiff's attorney but, at the hearing, the parties agreed to sever from these proceedings any claim the Cliburns might have for custody of the children. Therefore, in reality, the only parties claiming custody of the children in this suit are the plaintiff and the intervenor, Mrs. Nichols.
On February 16, 1988, the trial court entered judgment in favor of Mrs. Nichols, granting her permanent custody of the children and granting liberal visitation to the plaintiff. In reasons for judgment, the court found that the children had in fact lived with Mrs. Nichols for several years because the plaintiff had "given custody to Mrs. Nichols". The court found that the children were doing well in their present situation and that it was in their best interest to allow them to remain with Mrs. Nichols permanently.
The plaintiff appeals, claiming the trial court was mistaken in finding that the plaintiff had given custody of the children to the intervenor. The plaintiff argues the intervenor had the burden of proving that a *1202 grant of custody to the natural mother would be detrimental to the children and that an award of custody to the intervenor would be required in the best interests of the children. The plaintiff claims the trial court failed to make the requisite finding that a grant of custody to the mother would be detrimental to the children.

PARENT VERSUS NON-PARENT CUSTODY
Custody disputes between parents and persons other than parents are governed by LSA-C.C. Art. 146(B) which provides:
Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a non-parent is required to serve the best interest of the child. Allegations that parental custody would be detrimental to the child, other than a statement of the ultimate fact, shall not appear in the pleadings.
LSA-C.C. Art. 146(B) contains a dual-pronged requirement which must be met before a parent is denied custody of a child and custody is placed with a non-parent in a contested custody dispute. It must be determined that an award of custody to the parent would be detrimental to the child and that a granting of custody to the non-parent is required in order to serve the best interest of the child. Gordy v. Langner, 502 So.2d 583 (La.App. 3rd Cir.1987), writ denied 503 So.2d 494 (La.1987); Lions v. Lions, 488 So.2d 445 (La.App. 3rd Cir. 1986).
Parents enjoy a paramount right to custody, but that right may be outweighed by a showing of sufficiently great detriment to the child's best interest to require that custody be awarded to a non-parent. Thomas v. Thomas, 519 So.2d 357 (La.App. 2d Cir.1988); Boykin v. Corless, 488 So.2d 1153 (La.App. 2d Cir.1986); Boyett v. Boyett, 448 So.2d 819 (La.App. 2d Cir.1984); Johnson on behalf of Johnson v. Earls, 464 So.2d 463 (La.App. 1st Cir.1985); Gordy v. Langner, supra.
At an initial custody contest between a parent and a non-parent, the burden of proof is on the non-parent to show that granting custody to the parent would be detrimental to the child and that the best interest of the child requires an award of custody to the non-parent. Recknagel v. Roberts, 465 So.2d 844 (La.App. 2d Cir. 1985), writs denied 468 So.2d 570, 579 (La. 1985); Gordy v. Langner, supra; Batiste v. Guillory, 479 So.2d 1044 (La.App. 3rd Cir.1985); State in the Matter of Williams, 447 So.2d 1211 (La.App. 5th Cir. 1984), writ denied 449 So.2d 1357 (La.1984); In re Bourg, 501 So.2d 862 (La.App. 5th Cir.1987).
Use of the general term "detrimental" in LSA-C.C. Art. 146(B) embraces a wide range of situations and allows the court freedom to pursue the best interest of the child. Boyett v. Boyett, supra; Parker v. Payton, 511 So.2d 868 (La.App. 4th Cir.1987); In re Bourg, supra. The trial court may consider a multitude of factors in disputes between parents and non-parents. Parker v. Payton, supra. In reaching a determination of the best interest of the child, the trial court must look at the totality of the circumstances and in such a review, past misconduct may form an important consideration in determining present suitability. Gordy v. Langner, supra.
There are various ways to express the standard that custody to a parent would be detrimental to the child, including a finding that an award of custody to a parent would be harmful to the child. Batiste v. Guillory, supra. The standard is no longer limited to a finding that the parent is unable or unfit to have custody of the child. Consideration is also given to aspects of the physical, mental, or emotional well-being of the child. In re Bourg, supra.
Upon appellate review, the determination of the trial court in custody matters is given great weight and the court's discretion will not be disturbed on appeal absent a showing of abuse of that discretion. Thomas v. Thomas, supra; Dubois v. Dartez, *1203 494 So.2d 572 (La.App. 3rd Cir.1986); Tyler v. Tyler, 513 So.2d 512 (La.App. 2d Cir.1987); Berzins v. Betts, 457 So.2d 282 (La.App. 3rd Cir.1984).
The plaintiff argues that the trial court erred in failing to specifically find that an award of custody to her would be detrimental to the children. We agree that the trial court was required by LSA-C.C. Art. 146(B) to make a specific finding of detriment before granting custody of these children to a party other than a parent. We agree that, in this case, the trial court failed to make such a finding and that this failure constitutes error. However, even though the trial court has committed error, where the trial court record is complete, the appellate court must, if possible, render judgment on the record without remand. LSA-C.C.P. Art. 2164; Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975); Carpenter v. Williams, 428 So.2d 1314 (La. App. 3rd Cir.1983). In this case, the parties were aware of the issues presented and had an opportunity to prove or defend against those issues. Nothing would be gained by remanding the case to the trial court. Therefore, this court will examine the record and render judgment.
It is clear from the record that placing custody of the children with the mother would be detrimental to them. The plaintiff left these children in the state of Louisiana and was absent for approximately one year. During much of this time, her whereabouts were unknown even to her own parents. It is true that upon plaintiff's return she did seek to gain custody of the children. However, we note that an unusually long period of time elapsed between the filing of suit and the time a hearing was held. Certainly it was the plaintiff's burden to go forward with the proceedings and for whatever reason, the proceedings were delayed for two years.
The record also indicates that the plaintiff has failed to establish a close relationship with these children. When home studies of the parties were originally conducted in 1985, the children expressed a desire to live with either set of grandparents, but they notably lacked interest in their mother and exhibited a reluctance to talk about her.
The record does not show that these factors changed in the intervening two years. At the hearing, the plaintiff admitted that she did not know the names of the children's teachers and had never talked with any of them concerning the children's progress in school. Not only did the plaintiff fail to take an active part in the children's school activities, but she also showed little interest in their social activities, such as Boy Scouts.
Further, at the time of the hearing, the plaintiff had recently married, was expecting another child and was in the process of establishing a new home, all factors indicating that the environment which she could provide would be much less stable than that currently provided for the children by Mrs. Nichols.
Other factors in the record before this court further show that a grant of custody to the plaintiff would be detrimental to the children. The plaintiff has a history of adultery and drug abuse. While these factors alone might not be sufficient to establish that the placing of custody of the children would be detrimental, such conduct together with other factors is sufficient to deny custody to the mother. Gras v. Gras, 489 So.2d 1283 (La.App. 2d Cir. 1986), writ denied 493 So.2d 1222 (La.1986).
The plaintiff's past misconduct was discussed in the 1985 home study which was performed in connection with this litigation. The persons who were contacted to determine the type of environment the plaintiff could provide for the children indicated they did not believe the plaintiff had "resolved [her] problems". The only indication that the plaintiff no longer engages in such conduct (drug abuse, etc.) is her own testimony. Such a showing fails to support the plaintiff's contention of rehabilitation. Moore v. Moore, 479 So.2d 1040 (La.App. 3rd Cir.1985).
We are not unmindful of the result reached by the Third Circuit Court of Appeal in the case of Rachal v. Manausa, 483 So.2d 194 (La.App. 3rd Cir.1986). In that *1204 case, the trial court failed to make a specific finding that a grant of custody to the parents would be detrimental to the children and the appellate court reversed. Rachal is distinguishable from the present case. In Rachal there was no discussion of behavior on the part of the parents, such as substance abuse, adultery or instability, which might be harmful to the children.
Not only does the record show that placing custody of the children with the plaintiff would be detrimental to them, it also demonstrates that allowing Mrs. Nichols to retain custody would be in the children's best interest. Mrs. Nichols provides a stable environment for the children in which their physical needs are met. In addition, the children are given help with school work and are encouraged in their social pursuits, such as Boy Scouts. Although Mrs. Nichols works outside the home, her employment is across the street from the house in which the family lives. In addition, other family members are present in the home to give the children adequate supervision after school and at other times when Mrs. Nichols is not available.

CONCLUSION
For the above stated reasons, we find the record supports a finding that placement of custody of the children with the plaintiff would be detrimental and that placement of custody with their grandmother, Mrs. Nichols, is required to meet the children's best interests.
Therefore, we affirm the trial court judgment placing custody of the plaintiff's two minor children with the intervenor grandmother, Mrs. Betty Nichols. Costs are assessed to plaintiff-appellant.
AFFIRMED.

ON APPLICATION FOR REHEARING
Before FRED W. JONES, SEXTON, LINDSAY, HALL and NORRIS, JJ.
Rehearing denied.