605 So.2d 708 (1992)
Frances SHEPPARD and Robert M. Sheppard, Jr., Plaintiff-Appellee,
v.
Ricky HOOD and Mary A. Lisa Hood, Defendant-Appellant.
No. 23931-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1992.
*709 Claudius E. Whitmeyer, Shreveport, for defendant-appellant.
Samuel P. Love, Jr., Shreveport, for plaintiff-appellee.
Before SEXTON, VICTORY and BROWN, JJ.
*710 SEXTON, Judge.
Appellant, Mary A. Lisa Hood Gahagan, appeals a trial court judgment which denied her rule to change custody of her minor child, Jennifer Leigh Hood, and ordered custody to remain with the child's paternal grandparents, Frances Sheppard and Robert M. Sheppard, Jr. We affirm.
On April 29, 1986, Ricky Hood filed a petition for separation from his wife Mary A. Lisa Hood, now Gahagan. By judgment dated September 30, 1986, the parties were awarded joint custody of the sole child of that marriage, Jennifer Leigh Hood, date of birth July 13, 1983. Mrs. Gahagan was named domiciliary parent.
On December 23, 1986, the instant suit was filed by Jennifer's paternal grandparents, the Sheppards, seeking custody of their granddaughter. Thereafter, Mr. Hood filed for divorce which was granted by judgment rendered February 13, 1987. That judgment maintained the joint custody plan, with Mrs. Gahagan as domiciliary parent.
The Sheppards' custody suit contended that Jennifer may have been sexually molested by Mike Storey, Mrs. Gahagan's brother, and further alleged drug and alcohol abuse and bisexual promiscuity by Mrs. Gahagan. Therein, on July 7,1988, in what was stipulated by both parties at the trial on the instant rule to be a considered decree, the trial court awarded the Sheppards custody of Jennifer with reasonable visitation to Mrs. Gahagan. A judgment to that effect was signed on August 16, 1988.
On September 19, 1989, Mrs. Gahagan filed this rule for change of custody. Evidence adduced at trial revealed that both the Sheppards and Mrs. Gahagan could provide a good home environment for Jennifer. Mrs. Gahagan stipulated as to Mrs. Sheppard's good moral character and that the Sheppards are able to provide a good home environment. The evidence also shows that Mrs. Gahagan appears to be rehabilitated. She has remarried, attends Alcoholics Anonymous and Alanon, and claims to have had no alcohol or drugs in the past three and one-half years, and there is no evidence of any extramarital affairs. Further, it appears Mike Storey has been kept away from Jennifer. Jennifer, eight years old at the time of the hearing, testified that she wanted to remain with the Sheppards because she doesn't like her mother's new husband, Joe Gahagan. Jennifer testified, however, that if Mr. Gahagan was not there, she would probably want to live with her mother.
Expert testimony was presented by each side. Peggy Salley, a board certified social worker from Interactional Services, Inc., recommended that Jennifer remain with her grandmother. Ms. Salley began seeing Jennifer on March 19, 1987, continuing through the hearing in 1991. Ms. Salley found that Jennifer had made great progress in the last three to four years, but removing Jennifer from Mrs. Sheppard's home might cause depression, physical ailments, and academic problems.
Dr. Susan Vigen, a psychologist, recommended that, assuming that Mrs. Gahagan's home was a good, solid environment, Jennifer would be better off living with her mother, establishing a mother-daughter bond. It should be noted that Dr. Vigen only met with Jennifer for two days, on August 8 and 9, 1989, two years prior to the instant hearing. Further, Dr. Vigen made no comparison of the Sheppard and Gahagan homes and environments and acknowledged that the move would be an adjustment and cause stress on Jennifer.
Following trial, by judgment dated October 9, 1991, the trial court ordered that custody of Jennifer be continued in the paternal grandparents, the Sheppards. The trial court's oral reasons for judgment revealed that the trial court found that Mrs. Gahagan had been rehabilitated. Nevertheless, the trial court found that the mother's rehabilitation did not automatically entitle her to the returned custody of her child. Rather, the trial court found that following the earlier considered decree, to change custody, Mrs. Gahagan had a heavy burden of proving that continued custody of Jennifer by the paternal grandparents would be deleterious to the child or that the harm likely to be caused by a change in environment would be substantially outweighed *711 by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986). The trial court found that Mrs. Gahagan had not met this heavy burden of proof and rendered judgment in favor of the Sheppards. Stability was the primary factor influencing the trial court's opinion, as the child had lived with her grandparents for five years. However, the trial court did provide Mrs. Gahagan with liberal visitation.
On appeal, neither party contests that the initial judgment awarding custody to the Sheppards constituted a considered decree. In fact, the parties stipulated that it was a considered decree. The issue presented for review is what is the appropriate standard for a parent's attempt to modify an earlier considered decree that awarded custody to a non-parent.
In Bergeron, the Louisiana Supreme Court held that, following a considered decree of permanent child custody, a party seeking a change in custody bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of custody, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron involved a parent versus parent custody dispute.
The issue in the instant case is whether Bergeron is likewise applicable to a parent versus non-parent custody dispute. The rationale underlying the Bergeron rule, the desirability that there be an end to litigation where a party has previously had a full and fair opportunity to litigate and the undesirability of changing the child's established mode of living except for imperative reasons, are not limited to a parent versus parent custody dispute. Those concerns seem equally applicable in any custody contest.
Nevertheless, we are not unaware of the general rule that parents enjoy a paramount right to the custody of their children, which right may be outweighed only by a showing of sufficiently great detriment to the child's best interests to require that custody be awarded to a non-parent. Merritt v. Merritt, 550 So.2d 882 (La.App. 2d Cir.1989); Bolding v. Bolding, 532 So.2d 1199 (La.App. 2d Cir.1988).
Accordingly, pursuant to LSA-C.C. Art. 131B, prior to the award of custody to a non-parent, a dual requirement must be met. It must be determined both that an award of custody to the parent would be detrimental to the child and that a granting of custody to the non-parent is required in order to serve the best interest of the child. Merritt v. Merritt, supra; Bolding v. Bolding, supra.
We note with interest the language used in Bolding v. Bolding, supra, at 1202:
At an initial custody contest between a parent and a non-parent, the burden of proof is on the non-parent to show that granting custody to the parent would be detrimental to the child and that the best interest of the child requires an award of custody to the non-parent. (Emphasis added).
Clearly, at an initial custody hearing, the parent's right to custody of his or her child is at its apex. However, following an initial considered decree, the parent's paramount right to custody must be considered in conjunction with the Bergeron concerns for terminating repeated litigation and continuing a child's established living environment. Several cases, from both this circuit and the Fourth Circuit, have intimated that the heavy burden of proof outlined in Bergeron would be applicable following a considered decree in a parent versus non-parent custody dispute. See Pounders v. Rouse, 528 So.2d 672 (La. App. 2d Cir.1988); Thomas v. Thomas, 519 So.2d 357 (La.App. 2d Cir.1988); Parker v. Payton, 511 So.2d 868 (La.App. 4th Cir. 1987). However, in all three of the cited cases, Bergeron was found not to apply as there had not previously been a considered decree of child custody.
The Third Circuit has failed to apply and apparently failed to consider the application of Bergeron in at least two cases involving custody modification in parent versus non-parent disputes. In State in *712 Interest of Sylvester, 525 So.2d 604 (La. App. 3rd Cir.1988), and Gordy v. Langner, 502 So.2d 583 (La.App. 3rd Cir.1987), writ denied, 503 So.2d 494 (La.1987), without mentioning Bergeron, the Third Circuit held that, in order to regain custody from a non-parent, a parent previously deemed unfit has the burden of proving that he or she has become rehabilitated and that the circumstances which had given rise to his or her being initially deprived of custody no longer existed. Upon such a showing, the parent is to be granted the change in custody. Both of the Third Circuit cases relied on Guidry v. Guidry, 441 So.2d 384 (La. App. 5th Cir.1983), a case decided some three years before the Louisiana Supreme Court opinion in Bergeron. In light of the rationale of Bergeron and the burden delineated therein for modifying a considered custody decree, we decline to follow the Third Circuit's automatic change in custody solely upon a showing of a parent's rehabilitation.
Rather, we find that Bergeron applies to all attempts to modify custody following an earlier considered decree, including a dispute between a parent and a non-parent. Accordingly, a parent seeking custody of a child awarded to a non-parent by an earlier considered decree bears the heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by the advantages a change affords to the child.
We do acknowledge, however, that in considering the advantages to the child under the latter prong of Bergeron, evidence of a parent's rehabilitation and the possible establishment or reestablishment of a parental relationship should be a significant consideration. We find that such a procedure will provide equal dignity to a parent's paramount right to custody as provided in LSA-C.C. Art. 131B and the need for finality of litigation and the stability of a child's living environment as outlined in Bergeron.
Thus, in the instant case, the trial court properly did not end its inquiry after finding that Mrs. Gahagan had become rehabilitated. The trial court applied Bergeron and found Mrs. Gahagan failed to prove by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by the possible advantages to Jennifer. Such a determination by the trial court in a custody case is entitled to great weight and will not be disturbed on appeal in the absence of a showing of an abuse of discretion. Cooper v. Cooper, 579 So.2d 1159 (La.App. 2d Cir.1991); Lee v. Davis, 579 So.2d 1130 (La.App. 2d Cir.1991).
The Sheppards have provided a good, stable home environment for Jennifer for the past five years, more than half of the eight-year-old child's life. A move from the Sheppards' Benton home to Mrs. Gahagan's Shreveport home would entail a change in schools, friends, churches, and overall environment. A move to Mrs. Gahagan's home would entail Jennifer having to adjust to life with stepsiblings and an infant half brother. Further, Jennifer would have to live with her mother's new husband, Joe Gahagan, with whom Jennifer claims not to get along. Jennifer testified that she wanted to remain with the Sheppards, predominantly because she does not like Mr. Gahagan, whom Jennifer claims is mean to her. The child's preference, although not dispositive, is an appropriate factor to consider. Merritt v. Merritt, supra; Morgan v. Huddlestone, 430 So.2d 304 (La.App. 3rd Cir.1983), writ denied, 434 So.2d 1094 (La.1983).
Ms. Salley, the social worker, testified that a move to the Gahagan residence might cause Jennifer to suffer from depression, physical ailments, and academic problems. Even Mrs. Gahagan's expert witness, Dr. Vigen, acknowledged that such a move would be an adjustment and could cause Jennifer stress.
The trial court found that in light of this evidence, Mrs. Gahagan had failed in her heavy burden of proving by clear and convincing evidence that the harm likely to *713 result in a change of environment would be substantially outweighed by the advantages to Jennifer. The trial court made this decision after giving due consideration to Mrs. Gahagan's rehabilitation and the need for an establishment of a mother-daughter bond. The latter need was properly preserved through a plan of liberal visitation provided to Mrs. Gahagan. We find the trial court's conclusion maintaining custody of Jennifer with the Sheppards is amply supported by the record and certainly is not clearly wrong.
For the above and foregoing reasons, the judgment appealed from is affirmed at appellant's cost.
AFFIRMED.