640 So.2d 368 (1994)
Allison MILLET and Mrs. Magdalen Babin
v.
Sarah and David ANDRASKO.
No. 93 CA 0520.
Court of Appeal of Louisiana, First Circuit.
March 11, 1994.
Rehearing Denied April 29, 1994.
*369 James P. Doré, Borron, Delahaye, Edwards & Dore, Plaquemine, for appellees Jeffery and Lezlie Taylor.
Donna Wright Lee, Lee & Walsh, Baton Rouge, for appellant David Andrasko.
Before FOIL, PITCHER and PARRO, JJ.
PARRO, Judge.
This is a custody dispute between a parent and a non-parent. David Andrasko appeals the award of joint custody of his minor daughter to himself and Mr. and Mrs. Jeffery Taylor, with the Taylors being designated as domiciliary parents. The child's mother, Sarah Andrasko, is not a party to this appeal. For the following reasons, we affirm the judgment of the trial court.
The issue presented by this appeal is whether the trial court erred in continuing custody of a minor child with non-parents.

STANDARD OF REVIEW
The trial court's findings of fact in child custody matters are entitled to great weight, and its discretion will not be disturbed on review in the absence of a clear showing of abuse. Norris v. Norris, 604 So.2d 107, 113 (La.App. 2nd Cir.1992).

FACTS AND PROCEDURAL HISTORY
Sarah Millet ("Sarah") and David Andrasko ("Andrasko") were married on November 14, 1988. Of this marriage, one child, Heather Faye Andrasko ("Heather"), was born on July 11, 1989. The Andraskos separated approximately six months after Heather's birth, and were divorced on March 18, 1991.
On February 15, 1990, Allison Millet ("Millet") and Magdalen Babin ("Babin") were granted temporary custody of Heather.[1] Sarah and Andrasko were ordered to show cause on February 20, 1990, why the court's orders should not be made permanent. Andrasko was served with the petition and order on February 19, 1990, but he did not appear at the hearing on this custody matter. In his absence, custody was awarded to Babin and Millet.
On June 8, 1990, a joint motion for change of custody was filed by Millet, Babin, and Patricia Taylor ("Patricia").[2] The movers sought to have the court name Patricia as an additional custodian for insurance reasons. The court ordered the requested custody modification without a hearing on that same day. On or about December 5, 1990, Sarah and Andrasko filed a motion requesting a rule to show cause why they should not be granted reasonable visitation with their child. As a result of a stipulation by the parties at the January 18, 1991 hearing on this rule, the trial court awarded specific visitation rights and ordered Sarah and Andrasko to pay $200.00 per month in child support to Jeffery ("Jeff") and Lezlie "Toni" Taylor ("Toni"), who had physical custody of Heather since mid-June, 1990.
On July 25, 1991, Millet, Babin, Patricia, Jeff and Toni filed a petition for a change in custody seeking to have the court grant Jeff and Toni Taylor ("the Taylors") sole custody of Heather and issue a temporary restraining order suspending Sarah and Andrasko's visitation rights.[3] The hearing on this matter was ultimately conducted on September 18, 1991. By stipulation of the petitioners and Andrasko, the Taylors were awarded temporary custody of Heather, and Andrasko received specific visitation rights. However, this judgment did not contain a provision stating that neither party needs to show a change in circumstances to make adjustments to the order as was set forth in the judgment rendered after the January 18, 1991 hearing.
On November 15, 1991, Andrasko filed a rule to change custody against the Taylors seeking sole domiciliary care, custody, and control of Heather. Also on November 15, 1991, the Taylors filed a rule for continued custody in response to Andrasko's rule for a change in custody. The trial court began the *370 hearing on both rules on December 17, 1991, and it was eventually concluded on October 29, 1992.
Based on the evidence, the trial judge found that "[i]t would be extremely detrimental to change custody of this child at this time to her father." However, he awarded joint custody to the Taylors and Andrasko with the Taylors designated as domiciliary parents and a liberal visitation schedule set for Andrasko. Accordingly, Andrasko's rule for sole custody was denied. Andrasko appealed contending that the trial court erred in applying the best interest of the child standard in determining custody rather than the clear and convincing evidence of "compelling reasons" standard and in awarding joint custody to a non-parent and a parent.

STANDARDS USED IN CUSTODY DISPUTES BETWEEN A NON-PARENT AND A PARENT
It is well settled in our jurisprudence that in a custody contest between a natural parent and a non-parent, the parent enjoys a paramount right to custody of the child as against a non-parent. Love v. Love, 536 So.2d 1278, 1281 (La.App. 3rd Cir.1988). Only where "compelling reasons" have been proven by the non-parent should the natural parent be deprived of custody. Id.; Guidry v. Guidry, 441 So.2d 384, 386 (La.App. 5th Cir.1983); Wood v. Beard, 290 So.2d 675, 676-77 (La.1974).
At the time of the initial hearing, LSA-C.C. art. 131(B) established the burden of proof to be met by a non-parent in custody disputes with parents.[4] LSA-C.C. art. 131(B) provided, in pertinent part:
Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child. (Emphasis added)
The courts have uniformly applied the two-prong test set forth in LSA-C.C. art. 131(B) in initial custody disputes between a parent and a non-parent.
In this case, it is true that the dispute involves a parent and a non-parent, but it also involves a situation where a prior award of custody was made to a non-parent without initial objection by the parent, Andrasko. In fact, Andrasko entered into a consent (stipulated) judgment on September 18, 1991, in which the non-parents, the Taylors, were awarded the temporary custody of the minor child. This is tantamount to the giving of judicial consent by Andrasko to the Taylors' custody of his child, and removes this case from the ambit of the LSA-C.C. art. 131(B) standard of proof since this provision deals with initial custody determinations. Therefore, the issue presented for review is what is the appropriate standard to be applied in custody disputes where a parent seeks to modify an earlier consent decree that awarded sole custody to a non-parent.
Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), addresses the burdens of proof in cases involving a determination or a modification of child custody between parents. Basically, Bergeron provides that the "best interest of the child" standard applies in the initial determination, the "change of circumstances" rule applies after an uncontested initial award has been made, and the "heavy-burden" rule applies once a considered decree has been rendered.
The law is not settled as to who bears the burden of proof or as to what proof is necessary at a hearing by a parent against a non-parent to modify a considered decree or a non-considered decree of custody to the non-parent.
The second circuit has limited the imposition of the strict standard of proof by the non-parent set forth in LSA-C.C. art. 131(B) to the "initial custody contest" between non-parent(s) and parent(s). State in the Interest of C.G., 609 So.2d 1049, 1053-54 (La.App. 2nd Cir.1992), writ denied, 612 So.2d 85-86 (La.1993); Sheppard v. Hood, 605 So.2d 708, 711-712 (La.App. 2nd Cir.1992). The court in these cases applied the principles and *371 concerns expressed in Bergeron, 492 So.2d at 1200, in subsequent proceedings between a non-parent and a parent to modify custody. Cf. Parker v. Payton, 511 So.2d 868, 871 (La.App. 4th Cir.1987). Contra State in Interest of Sylvester, 525 So.2d 604, 607 (La. App. 3rd Cir.1988); Gordy v. Langner, 502 So.2d 583, 587 (La.App. 3rd Cir.), writ denied, 503 So.2d 494 (La.1987).
The second circuit in Hill v. Hill, 602 So.2d 287 (La.App. 2nd Cir.1992), held that Bergeron's "change in circumstances" rule, which is applicable in proceeding for modification of an uncontested initial award between parents, also applies to proceedings for modification of a non-considered decree between a non-parent and a parent. In Hill v. Hill, the court held:
[A]t a subsequent hearing to change custody awarded by a `nonconsidered' decree we find that the burden of proof should be on the party seeking the change and the standard should be the same as is applicable in custody disputes between parents. Thus the natural mother who is seeking a modification of the consent judgment must show a material change in circumstances and that a change in custody is in the best interests of the child. (Citations omitted)
602 So.2d at 289. See Blakesley, Louisiana Family Law, § 12.43 (1993).
This court agrees that the "rationale underlying the Bergeron rule, the desirability that there be an end to litigation where a party has previously had a full and fair opportunity to litigate and the undesirability of changing the child's established mode of living except for imperative reasons, are not limited to a parent versus parent custody dispute." Sheppard v. Hood, 605 So.2d at 711. The concerns of Bergeron are equally applicable in custody disputes between non-parent and parent. Id. Therefore, this court reverts to Bergeron for the requisite burdens of proof in cases involving a modification of child custody between a parent and a non-parent.
As noted earlier, the record reveals that Andrasko had more than one full and fair opportunity to litigate. Initially, he voluntarily opted not to participate. Thereafter, at the September 18, 1991 hearing, he consented to a judgment awarding sole custody to the Taylors. Therefore, it is clear that Andrasko must first prove a change in circumstances materially affecting the child's welfare before the court considers the "best interest of the child" standard.[5]

APPLICATION OF THE CHANGE IN CIRCUMSTANCES RULE TO THIS CASE
Do the changes that took place between September 18, 1991 and October 29, 1992 constitute a change in circumstances materially affecting the child's welfare? This court thinks not.
Andrasko submits that his lifestyle has changed drastically in the few months prior to the December 17, 1991 hearing, no doubt as a result of his recent worker's compensation settlement from his 1982 work injury.[6] With these settlement proceeds, Andrasko purchased a home located on a five-acre tract of land. Prior to purchasing this home, Andrasko and his fianceé resided in an apartment which contained an extra bedroom for Heather. He and his fianceé, with whom he was residing prior to September 18, 1991, moved into this home in November, 1991 and were married on January 4, 1992.
He submits that he is now financially able to take care of his daughter and provide her with a stable environment and home. Interestingly, Andrasko admitted that there was nothing that prevented him from being able to take care of Heather at his income level prior to the settlement.
In circumstances such as are presented here, custody may not be determined simply on the basis of comparing the financial ability of the potential custodians. The changes in Andrasko's life have admittedly occurred due to his recent acquisition of money. Andrasko's ability to provide financially for Heather *372 is only one factor to be considered in determining custody. After a review of the entire record, this court finds that the changes shown by Andrasko in and of themselves are not so serious that we may infer that they materially affected the child's welfare. Absent a showing of other significant changes sufficient to constitute a material change in circumstances that affect the welfare of Heather since September 18, 1991, this court is unable to find that the trial court erred in failing to award Andrasko sole custody of his minor child.[7]

DECREE
For the foregoing reasons, we affirm the trial court's judgment at Andrasko's costs.
AFFIRMED.
NOTES
[1] Millet is Heather's maternal aunt, and Babin is her maternal great grandmother.
[2] Patricia is Babin's daughter-in-law (or Heather's maternal great aunt by marriage).
[3] Jeff and Toni Taylor are married. Jeff is the son of Patricia Taylor, and he is Sarah's first cousin.
[4] LSA-C.C. art. 131(B) was amended by Act No. 261 of 1993, which became effective on January 1, 1994. The substance of the source provision is now contained in LSA-C.C. art. 133.
[5] The evidence indicates that prior judgments were not "considered decrees;" therefore, the "heavy-burden" rule is inapplicable.
[6] Prior to this settlement, Andrasko received $1,700 a month in worker's compensation benefits.
[7] This court notes that Andrasko raises the issue of whether custody can be awarded to a parent and a non-parent, jointly. The consent judgment rendered at the September 18, 1991 hearing awarded sole custody to the Taylors. Pursuant to Andrasko's request for a change in custody, the trial court modified its previous judgment to afford Andrasko greater custodial rights. In light of Andrasko's failure to prove a "change in circumstances," the trial court erred in modifying the prior award of sole custody. The modification is a point that should have been appealed by the Taylors and not Andrasko; therefore, we pretermit the interesting issue of whether joint custody between a parent and non-parent is ever legally possible under LSA-C.C. art. 131 et seq.